CHARLES CROWELL, APPELLANT, v. WILLIAM SKILLICORN ET AL., APPELLEES.

FILED DECEMBER 9, 1916.   No. 19028.

Contracts: RESCISSION: LACHES. When the grantee in a deed assumes and agrees to pay a mortgage indebtedness on real estate covered by the deed, but fails to keep this stipulation of his contract, and suffers the land to be sold under the mortgage, and sheriff's deeds to a third party to be issued, and he stands idly by for two years

thereafter, he will not then be permitted to rescind, nor be heard to assert in a court of equity that he was deceived as to the quality, quantity and character of the land, and that his grantor held no title thereto, and therefore conveyed no title to him, when his title to, and possession of, the land has never been called in question (except only by the enforcement of the mortgage liens which he had assumed and agreed to pay), without putting, or offering to put, the other party in *statu quo.*

APPEAL from the district court for Holt county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*Edwin J. Stason* and *P. W. Cain,* for appellant.

*M. F. Harrington* and *C. E. Dean, contra.*

MORRISSEY, C. J.

This is an action by plaintiff to rescind a contract for the exchange of lands and to cancel a deed conveying to defendants 970 acres of land in Holt county and to quiet title thereto. From a judgment of dismissal, plaintiff has appealed.

April 23, 1907, plaintiff and defendants entered into a contract for the exchange of plaintiff's Holt county land for $1,250 and land owned by defendants seven miles northwest of Onawa, Iowa, referred to as: "The following described property situated in the county of Monona, state of Iowa, to wit: Lots 1, 2 and 3 in section 32, and lot 3, also southwest quarter of southwest quarter in section 33, all in township 84, range 46, and the northeast quarter of the northwest quarter and lot 1 in section 5, township 83, range 46, containing 407.87 acres, more or less, together with all lawful accretions thereto."

The land conveyed by defendants was subject to two mortgages for $7,000, which plaintiff assumed and agreed to pay. Plaintiff's land was subject to a mortgage for $4,860, which defendants assumed. Defendants paid plaintiff $1,250 in cash, and also allowed him the rent for the Holt county farm for 1908, estimated at $700. Plaintiff took possession of the land conveyed to him in 1908. In July of that year the greater part of the land was over-

flowed by high water of the Missouri river. April 24, 1908, the owner of one of the mortgages commenced an action of foreclosure, and October 16, 1908, the property was sold at sheriff's sale, and November 22, 1909, redemption not having been made, a deed was executed to the purchaser at such sale, March 6, 1911. Without previous notice of his intention to rescind the contract of exchange, plaintiff commenced this action. He alleged that defendants were guilty of fraud in representing the quantity, quality and value of the land, and in representing that the land was not subject to overflow. He also alleged that the land conveyed to him was the former bed of the Missouri river, a navigable stream, and that under the laws of Iowa the land belonged to the state. During the trial the petition was amended to allege that the land belonged to riparian owners on the Nebraska side of the river, and was not in Iowa, and did not belong to defendants.

Summarized, the undisputed facts show: Defendants acquired title to the Monona county land in 1904 in an exchange for an equity in an electric light plant. They listed the land for sale with Fred Lawson, a real estate agent at Glenwood, Iowa. The latter was informed that plaintiff desired to trade his Holt county land for Iowa land, and, after correspondence, plaintiff came to Glenwood. He accompanied Lawson to Onawa. From there, in company with Will Hawkins, a real estate agent at Onawa, they drove over the land. Upon returning to Onawa plaintiff made a written offer to exchange his land for defendant's land and $2,200. He also offered to pay Lawson $100 if he could induce defendants to make the trade. This offer was sent to defendants. William Skillicorn, one of the defendants, in company with Lawson, made a trip to Holt county and inspected plaintiff's land. Subsequently C. H. DeWitt, the other defendant, also made an inspection of plaintiff's land. Later the contract of exchange was executed. The consideration named in each deed was $30,000.

Plaintiff contends that defendants, and their agents, represented to him that there were 407 acres of surveyed lands, and enough accretion land to make 1,000 acres. The original government survey shows that there were 277 acres. The deed by which defendants acquired title described the land by the terms of the government survey, and as "containing 407.87 acres, more or less, together with all lawful accretions thereto." The testimony of defendants indicates that they told plaintiff there were 407 acres of "deeded" land, and produced the conveyance to themselves showing this: that they informed plaintiff they had not surveyed the land, but thought there was enough accretion land to make 1,000 acres. Plaintiff was a farmer and had inspected the land. Defendants were not guilty of misrepresenting to the plaintiff the quantity of land.

Plaintiff also contends that defendants deceived him as to the quality and value of the land. Testimony on behalf of defendants shows that the land was worth $25 or $30 an acre for "trading" purposes. Plaintiff's land was worth from $10 to $15 an acre. The consideration named in each deed was a "trading" value, and was far in excess of the actual value. Plaintiff lived in Iowa from 1873 to 1876, about three miles southwest of the land which defendants conveyed to him. He was familiar with the fact that the Missouri river was a shifting river. He testified that he asked defendants' agents whether the river overflowed the land, and was told that it did not do so. He also asked defendant DeWitt whether the river overflowed, and was told that it had not while defendants owned the land. The agents deny that they were asked whether the river overflowed the land. The evidence justifies the inference that plaintiff at the time knew that the land had formerly been overflowed. He testified that he knew that the river had run south and east of the land he was inspecting, and knew that the land was much lower than the land east of the old bed of the river. He has lived within a few miles of the Missouri river the

greater part of his life, part of the time on the Iowa side, a few miles southwest of the land in question. The record indicates that plaintiff and defendants held title to incumbered lands which could not readily be sold for cash, and that plaintiff believed, after a good inspection of the land, that he had made a good bargain. In view of plaintiff's familiarity with the actions of the Missouri river and his acquaintance with lands along the river, the evidence does not justify a finding that he was deceived either as to the quality or the value of the land.

Plaintiff contends that the evidence shows that the land was in Nebraska, and not in Iowa, and that defendants were guilty of fraud in representing that they owned the land and that it was in Iowa. It was stipulated that, when the government survey was made in 1853 and when the patent was issued, the land was riparian land on the east side of the Missouri river. Previous to 1876 the river had moved eastward and overflowed all but one acre of the patented land. From 1866 to 1876 the river gradually shifted its course westward again. A sandbar was thrown up in the river. In 1876, within two or three months, the river made a cut-off through the sandbar. The present channel is a mile and a half west of the government survey line of 1853. There is a "chute" between the land conveyed by defendants and the sandbar, west of which the river flows. In 1894 the land between the government survey and the chute, comprising 135 acres, was surveyed by the county, and has since been taxed by Monona county, Iowa. Plaintiff argues that the change in the course of the river was not gradual, but was sudden, amounting to an avulsion, and that the state boundary did not change, and that the land is within the Nebraska half of the bed of the stream. Plaintiff has not shown that there was a sudden avulsion of the stream to overcome the presumption that the land on the east side of the Missouri river is in Iowa. The land conveyed to plaintiff had been assessed by the state of Iowa since 1894. Plaintiff's title to the land has not been questioned either

100  Neb.—28

by individuals or the state.   There is nothing to indicate that it would have been questioned.

The real estate was mortgaged, and plaintiff took his deed subject to this mortgage incumbrance, which he assumed and agreed to pay.   He broke this stipulation of his contract, and permitted the land to be sold under the mortgages.   Plaintiff took possession of the land in 1908. The same year this mortgage foreclosure was commenced. A year later the sale was confirmed and deed issued. This suit was not commenced until 1911.   He waited more than two years after the foreclosure of the mortgage without making any move to rescind.   If the property had been misrepresented, he must have known it before the time for redemption from the mortgage foreclosure had expired. If he had any right to rescind the contract, and contemplated doing so, in good conscience, he ought to have made his intention known before the mortgage foreclosure was completed, and not wait until after whatever equity of redemption he, or his grantor, possessed had been extinguished.   Having broken the stipulation in his contract to pay the mortgages, and having put it beyond his power to reconvey such title as he received, he cannot be heard to complain of what he alleges is a paramount title in somebody else who has never sought to assert title.   The judgment is

AFFIRMED.

SEDGWICK, J., not sitting.