JAMES P. MOONEY ET AL., APPELLEES, V. DRAINAGE DISTRICT No. 1 OF RICHARDSON COUNTY ET AL., APPELLANTS.*

274 N. W. 467

FILED JULY 14, 1937. No. 30049.

*Affirmed on rehearing. See opinion 134 Neb. ——.

*Flansburg, Lee & Sheldahl* and *Archibald J. Weaver*, for appellants.

*Jean B. Cain, Kennedy, Holland, De Lacy & Svoboda* and *Edson Smith, contra.*

Heard before Goss, C. J., Rose, Good, Eberly, Day, Paine and Carter, JJ.

Paine, J.

This is a suit in equity, brought by James P. Mooney and others who are property owners in Drainage District No. 1, Richardson county, to obtain an injunction to prevent the said drainage district and its officers from dissolving said district until the judgment of the district court on the mandate from the supreme court in the case of *Mooney v. Drainage District,* 126 Neb. 219, 252 N. W. 910, has been fully performed and all outstanding indebtedness of said district is discharged. To this petition in equity a long answer and cross-petition of 14 pages was filed by said Drainage District No. 1 and the five defendants as individuals and as supervisors of Drainage District No. 1 of Richardson county, Nebraska. The plaintiffs filed, first, a motion, and after this was overruled in part and sustained in part, the plaintiffs filed a general demurrer to the defendants' answer and cross-petition, which was sustained by the court. The defendants elected to plead no further, and the court entered an order enjoining the drainage district from dissolving until after it had enlarged the channels to meet the order of mandatory injunction issued prior to the amendment of the law. From this judgment the defendants have appealed.

The second amended petition alleged that said Drainage District No. 1 was duly incorporated by decree of the district court on February 14, 1906.

It is further alleged that on April 23, 1930, the plaintiff, for himself and others, filed a petition in equity, the object and prayer of which was for an order requiring said drainage district to immediately construct an outlet in the lower Nemaha valley; that upon due hearing the district court

did on July 25, 1932, issue an order and judgment, from which an appeal was taken to the supreme court, and the mandate on its decision was duly entered in the district court for Richardson county on November 19, 1934, and it is alleged that in the opinion in the case of *Mooney v. Drainage District,* 126 Neb. 219, 252 N. W. 910, it was held that the district should be required to enlarge the outlet of its drainage system between bridge 64 and the Missouri river to a minimum carrying capacity of 20,000 cubic feet per second in the lower Nemaha valley, and that such mandate and judgment are now in full force and effect, but defendants have refused and neglected to comply therewith.

That the said defendants on April 1, 1936, filed a proceeding in the district court to dissolve said district under section 31-475, Comp. St. Supp. 1935, without first complying with said mandate.

That the defendants caused the legislature to pass a bill amendatory of section 31-463, Comp. St. 1929, in which the words added to said section are set out in italics, as follows:

"If at any time after the final construction of such improvement the same shall become out of repair, obstructed, inefficient, or defective from any cause, *except such as are the result of the use of said improvements as a joint outlet for other systems of drainage improvements,* the board of supervisors, *if in its discretion it is practicable and feasible to make such repairs, remove such obstructions and correct such inefficiencies,* may order an assessment upon the lands and property benefited by the drainage system for the purpose of placing the same in proper and suitable condition for drainage purposes." Laws 1935, ch. 74 (Comp. St. Supp. 1935, sec. 31-463).

And the defendants pretend to construe said amendment as depriving them of the power to proceed under the mandate of the court.

Plaintiffs further allege that this amendment did not go into effect until May 27, 1935, and that the defendants

should have proceeded to enlarge the outlet of their drainage system as ordered; that the aforesaid judgment is mandatory, and that the amendment, in so far as it allows the district to escape the obligation to enlarge said outlet, is null and void, and violates section 10, art. I of the Constitution of the United States, and the Fourteenth Amendment thereto, and prays that said defendant district be enjoined and restrained from dissolving until it has complied with the mandate of the supreme court. There are attached to said petition, as exhibits, the petitions of electors, dated March 27, 1936, of said defendant district, asking its board to call an election to vote on the dissolution of said district.

On June 5, 1936, the defendant district et al. filed their answer and cross-petition, admitting the incorporation of the district, and that a mandate from the supreme court was filed November 19, 1934, and said judgment and mandate are attached to said answer and cross-petition as exhibit B, and exhibit A attached thereto is the decree of the district court, entered on July 25, 1932, by John B. Raper, Judge.

Said answer and cross-petition admits the incorporation of said Drainage District No. 1, and that on April 23, 1930, the plaintiff filed a petition in equity, the object and prayer of which was for an order requiring the drainage district to immediately construct an outlet in the lower Nemaha valley, and that the final action is shown by the exhibits above set out.

It is further alleged that said judgment and mandate were not based on any specific plan or detailed specifications, formulated no particular method to be followed, but were in their nature purely executory orders, declaratory of the then-existing duty prescribed by statute, and that such judgment of the supreme court commanded the supervisors to proceed and comply with the obligations fixed by such statute, and that the plaintiff acquired no vested rights therein, and none which were not subject to repeal at the hands of the legislature.

Defendants say that after the entry of the judgment on the mandate on November 19, 1934, they proceeded in all good faith to comply with said judgment and order, as is specifically set forth in said answer, but that, before definite action could be taken and any contract rights established, the legislature had repealed the provisions of the statute upon which said judgment was based.

The defendants admit that they have taken the preliminary steps for holding an election to vote on the question of the dissolution of the district, but, finding that such resolution was premature, as there were some outstanding district warrants which were unpaid, and must be satisfied before the district could dissolve, the board withdrew the filing, and notified the clerk of the district court to proceed no further thereunder, and, as evidenced by the resolution certified to the clerk of the district court, it is not now the purpose nor the intent of the said defendants to dissolve, nor to hold an election for the dissolution of the district, except in accordance with the approval of the district court, and after no outstanding indebtedness remains.

It was further alleged in said answer that, when the judgment and mandate were entered on November 19, 1934, the winter months were coming on and it was too late to commence work of enlargement during that year, but that the defendants at once procured an engineer, made surveys, worked out plans, with detailed specifications, for the construction and enlargement of such channel as would fully comply with the order of the court, and that the report of said engineer was that it will cost $152,375 to enlarge the channel to a capacity of 20,000 cubic feet per second, as ordered in said judgment and mandate.

That upon the receipt of the plans the defendants took immediate steps to procure a federal grant, and applied to the headquarters of the public works administration in Nebraska, setting forth a copy of the plans and specifications; that a grant was approved by the Omaha headquarters, and they expected an allotment of the money on said grant, but in November, 1935, were advised that there

would be no more money for allotments that year in Nebraska.

It is further alleged in said answer that, before any contracts had been made by the defendants for the accomplishment of the enlargement of the outlet, the legislature of Nebraska amended the law, with emergency clause, as set out in chapter 74, Laws 1935 (Comp. St. Supp. 1935, sec. 31-463) and thereby took from the defendants the right to make such improvement.

It is further alleged in said answer that the legislature has full and unlimited control of the defendant district, and that the plaintiff and every other property-holder in the defendant district is charged with knowledge of the power of the legislature to amend and change the obligations and duties of said drainage district. That, when the supreme court decided the former case, the law (Comp. St. 1929, sec. 31-456) provided that, when the channels of one drainage district were used by another district, and it became necessary to deepen or enlarge the watercourse, such other district could be compelled to contribute to the cost thereof. But the legislature enacted a law, section 31-475, Comp. St. Supp. 1935 (Laws 1933, ch. 51), which became effective August 9, 1933, and permitted drainage districts which had no outstanding indebtedness to dissolve, under which statute, and by a decree of the district court, each of said drainage districts above Drainage District No. 1, defendant herein, being District No. 3 of Nemaha county, District No. 1 of Pawnee county, and Districts Nos. 2, 3, 4 and 5 of Richardson county, all were immediately dissolved, and if the defendant district is now compelled to comply with the order of the court as heretofore made, the engineer, employed by the defendant district since the judgment and mandate here entered, reports that such widening of the channel will cost $152,375, and the defendants have been advised that, under the law as now amended, they could not make any valid contracts for the construction of the work, for the district cannot make a levy of assessments to collect taxes against the property

in its district to make "improvements as a joint outlet for other systems of drainage improvements."

If compelled to spend this money, defendant district will have no right of contribution against said dissolved districts, which were all public corporations, and all legally dissolved before any rights of contribution had vested in behalf of Drainage District No. 1, and therefore the property owners in District No. 1 would be required to pay excessively large assessments to meet the cost of the enlargement of said channel in the sum of $152,375, and which enlargement would be for the benefit of the property-holders in the former districts now dissolved.

It is further alleged in said answer that the amendment deprives them of the power of entering into a contract, and that the defendants with justification cannot now safely take further action in pursuance of said order of court until the court construes, defines, and declares the powers of the defendant district in reference to the full meaning and extent of the amended section of the statute, which became effective May 27, 1935.

Wherefore, the defendants pray that the court find that the judgment does not constitute or create an indebtedness, and that the petition of the plaintiffs praying for an injunction shall be dismissed.

Defendants further, and by way of a cross-petition, set out much the same facts and the cost of making the changes ordered, and pray that the court notify and relieve the supervisors of the district and direct them to take no further steps toward the completion of the plan or the letting of contracts.

On July 14, 1936, the plaintiffs filed a demurrer to such answer, on the ground that it appears upon the face thereof that such answer does not state facts sufficient to constitute a defense to the action, and demur to the cross-petition for the same reasons.

On September 21, 1936, the demurrer was argued and submitted to the court, and the court sustained the demurrer. The defendants in open court thereupon elected

to stand upon their answer and cross-petition. It was therefore ordered, adjudged, and decreed by the court that Drainage District No. 1 and the officers thereof be and they are permanently enjoined and restrained from taking any steps looking to the dissolution of said drainage district until the orders of the district court and the supreme court have been fully, completely, and finally performed, and all outstanding indebtedness of said district discharged.

It appears that, since this Drainage District No. 1 was organized in 1906, many additional drainage districts have been organized above this district on the Nemaha river, and many laterals were put in, and water from an enormous area was accelerated and came down to this lower drainage ditch, so that it was unable to carry the water off from these additional districts.

This was the situation when this court rendered its decision in *Mooney v. Drainage District,* 126 Neb. 219, 252 N. W. 910. It was there said that bridge 64 of the Burlington railroad is between seven and eight miles from the junction of the Nemaha river with the Missouri river, and the carrying capacity of the outlet below this bridge 64 was 8,440 cubic feet per second to take care of the run-off of the watershed of 1,875 square miles; that the minimum capacity should be 20,000 cubic feet per second; that the consensus of evidence of experts is that to enlarge the outlet to 20,000 cubic feet would cost approximately $50,000, and, the opinion added, while it is a large sum of money, yet it will be spread by an assessment of about $1.65 an acre over 31,000 acres of land; or, on 6,000 acres of land of plaintiffs, 30 per cent. will be paid, and 70 per cent. on the remaining 25,000 acres, or only $1.40 an acre.

These are the optimistic figures this court placed in its opinion, filed February 21, 1934, based on testimony taken in the district court in 1932, and now we are faced with the statement in the answer, which we must accept as true for the purpose of ruling on this demurrer, that the cost now will exceed our former estimate more than three times, and be $152,375, and by the amendment to the law no part

of it can be levied and assessed against the land in the upper six drainage districts using this outlet, for tax levies on that land could only be made by their duly elected district supervisors, and all those districts have been legally dissolved, and have no officers; and in the cross-petition, which is also admitted by plaintiffs' demurrer, it is alleged in paragraph one that, to meet the cost of this improvement by a levy of taxes upon the property only in District No. 1, will require assessments of from $8 to $12 an acre.

A drainage district is a public corporation. It is an arm or branch of government over which the legislature has plenary control.

In *Drainage District No. 1 v. Richardson County,* 86 Neb. 355, 125 N. W. 796, the owners of about 30,000 acres of swamp, overflowed, or submerged lands, situated in Richardson county, formed a drainage district, and it was held that a drainage district organized under article IV, chapter 89, Comp. St. 1909, is a *public,* and not a private, corporation. *Neal v. Vansickle,* 72 Neb. 105, 100 N. W. 200; *Richardson County v. Drainage District No. 1,* 113 Neb. 662, 204 N. W. 376.

In our former opinion it was held that there was a duty on District No. 1 to do certain things by reason of the statute, but the legislature, by changing the statute, has obliterated this means of recoupment from the other districts.

A writ of mandatory injunction is an executory order, directing the performance of a preexisting duty. It creates no new authority, and confers no new powers, and establishes no new rights. This characterization of such an order is found in *State v. School District No. 9, York County,* 8 Neb. 92, where Chief Justice Maxwell said: "A writ of mandamus is granted merely to compel action and enforce the performance of a preexisting duty. It creates no new authority, nor confers any powers which did not previously exist. It is therefore in no sense a creative remedy."

It is said that "A repeal of the law under which the

relator's right to the performance of a duty by respondent accrued justifies respondent's refusal further to obey the writ." 38 C. J. 937.

The case of *State of Pennsylvania v. Wheeling and Belmont Bridge Co.,* 18 How. (U. S.) 421, 15 L. Ed. 435, was decided at the December term, 1855, and was a suit in equity, brought by a party operating steamboats over the Ohio river, which was a navigable stream. The object of the suit was to procure a mandatory injunction to require the defendant bridge company to remove or to elevate a bridge to a designated height. A mandatory injunction directed that it be done, but congress then enacted a law which applied to this bridge, and made it a lawful structure, which legislation the bridge company procured. It was said that, as a general proposition, congress could not annul a judgment of the supreme court of the United States, or impair rights so determined, yet that part of the decree holding the bridge was in conflict with the regulations of congress was executory, and congress, by the exercise of its constitutional power, having changed the law relating to obstructions, so that the bridge is no longer an unlawful obstruction, it is quite plain the decree of the court cannot be enforced. There is no longer any interference with the enjoyment of the public right inconsistent with law, no more than there would be where the plaintiff himself had consented to it, after the rendition of the decree.

In *City of Fremont v. Dodge County,* 130 Neb. 856, 266 N. W. 771, we held: "The legislature has a plenary law-making power over all subjects, whether pertaining to persons or things, within its territorial jurisdiction, and can make new laws or repeal old laws unless the same are expressly prohibited by the Constitution." In that decision is set out at length the leading case in the United States, *State v. Baltimore & O. R. Co.,* 12 Gill. & J. (Md.) 399, 38 Am. Dec. 317, which concerned a railroad charter requiring the railroad to build through three towns or forfeit $1,000,000 to the state of Maryland. When the railroad

failed to build through these towns and a suit was brought, the legislature passed an act releasing the railroad from the payment of the million dollars, and it was held that the act of the legislature in releasing the penalty did not violate the provisions of the Constitution prohibiting the legislature from impairing the obligation of a contract.

Again, in 1 Lewis' Sutherland, Statutory Construction (2d ed.) sec. 244, statutes are perpetual when no time is stated, but the operation of statutes may be suspended. "A state legislature has a plenary law-making power over all subjects, whether pertaining to persons or things, within its territorial jurisdiction, either to introduce new laws or repeal the old, unless prohibited expressly or by implication by the federal Constitution or limited or restrained by its own." A legislature may modify or abolish acts passed by itself or its predecessors; and in section 272, "Where the revising act prescribes its operation or effect upon a previous statute, it will have no other;" and in section 280, "If a conflict exists between two statutes or provisions, the earlier in enactment or position is repealed by the later."

In the case at bar, the prior law provided that the district "may" enlarge its channels and assess the costs. This court, in the decision in 126 Neb. 219, 252 N. W. 910, held that this word "may" was mandatory. Thereafter the legislature enacted a new law showing that the legislative intention was that a different policy should prevail than the interpretation placed upon the law by the court.

In considering Drainage District No. 1, as well as these other drainage districts from which water flowed down into District No. 1, it will be noted that they were all public corporations, each of which existed solely as a creature of the legislature, having only such powers as the legislature gave to each of them. If the legislature can give powers to such public corporations, it certainly has the right to take them away, and when the legislature decided to do so, and has seen fit to amend and change the law, we must interpret the law in the light of what the legislature has said.

The right to levy taxes for drainage improvements is wholly statutory in its nature, and the legislature may at any time curtail or abrogate powers previously granted to such public corporations, provided in so doing it does not impair the obligation of contract, nor interfere with vested rights. *City of Beatrice v. Gage County,* 130 Neb. 850, 266 N. W. 777; *Chester School District's Audit,* 301 Pa. St. 203, 151 Atl. 801; *Stone v. Street Commissioners of Boston,* 192 Mass. 297, 78 N. E. 478. It has been said there is no vested right in the continuance of a particular tax. 12 C. J. 967; Cooley, Constitutional Limitations (6th ed.) 469.

The allegations of the answer are controlling as to all questions presented in the demurrer. *Nesbitt v. Campbell,* 5 Neb. 429; *Oakley v. Valley County,* 40 Neb. 900, 59 N. W. 368. It may be argued that the allegations of the answer would not be sustained by the evidence if the case went to trial, but that question cannot be considered by us in passing upon this demurrer, for this court must assume that all proper allegations of the answer are controlling and would be sustained by the evidence. The law of the case as determined by the previous judgment entered by this court created no vested right, and would not appear to be controlling upon us now if the allegations of the present answer would be obnoxious to that decision, for we are now limited to the law as it stands at the present time.

In our former opinion we held it was a duty on the defendant district to do certain things by reason of the statute as it then existed, but as its means for contribution from the upper districts have now been obliterated by the legislature, and the authority of the defendant to construct said outlet having been taken away by the legislature, the directions we gave in our former opinion are not now subject to enforcement under the law as it now exists.

A former legislature gave certain rights and powers to the defendant district, and before the district had time to carry out the directions of this court founded on that former law, the legislature saw fit to take away those rights and powers.

It may be argued that the plaintiff is complaining of his damages, present and prospective. He may have a right of action against whoever has damaged him, but the defendant is a public corporation, and absolutely bound to act only as directed by the legislature.

Some cases in support of our findings are: *Hodges v. Snyder*, 45 S. Dak. 149, 186 N. W. 867; *Gibson v. Sherman County*, 97 Neb. 79, 149 N. W. 107; *State v. Rowe*, 108 Neb. 232, 188 N. W. 107; *School District of Omaha v. Gass*, 131 Neb. 312, 267 N. W. 528; *Munsell v. City of Hebron*, 117 Neb. 251, 220 N. W. 289.

For the reasons herein set out, we conclude that the trial court was in error in sustaining the demurrer to defendants' answer and cross-petition, and the judgment entered is reversed, and cause is remanded for such further proceedings as the trial court shall direct.

REVERSED.