JAMES P. MOONEY ET AL., APPELLEES, V. DRAINAGE DISTRICT
No. 1 OF RICHARDSON COUNTY ET AL., APPELLANTS.

278 N. W. 368

FILED MARCH 4, 1938.   No. 30049.

*Flansburg, Lee & Sheldahl* and *Archibald J. Weaver,* for appellants.

*Jean B. Cain, Kennedy, Holland, De Lacy & Svoboda* and *Edson Smith, contra.*

*George H. Heinke, amicus curiæ.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ.

EBERLY, J.

This is a suit in equity for a mandatory injunction to prevent Drainage District No. 1 of Richardson county and the supervisors thereof, defendants, from dissolving the drainage district before they comply with an affirmed

judgment of the district court for Richardson county, requiring them to enlarge the outlet of their drainage system between Burlington railroad bridge 64 and the Missouri river to the minimum carrying capacity of 20,000 cubic feet of water a second. James P. Mooney and others similarly situated, plaintiffs, are owners of lands which were assessed by the district for drainage benefits.

The former judgment of the district court for Richardson county required defendants to increase the capacity of the outlet to a minimum of 11,000 cubic feet of water a second. From this judgment defendants appealed to the supreme court, and plaintiffs appealed from the order limiting the minimum capacity to 11,000 cubic feet of water a second. On appeal the supreme court found, referring to the legislation on the subject:

"That a district organized under this act has the power to construct a drainage system and to maintain, improve, and repair it, within the limit of the appraised benefits to the land within the district; that whenever such drainage system becomes out of repair, defective, or inefficient for any reason, it is its duty to improve and repair it, within the limit of its power, so that it may serve the purpose for which it was constructed, and to the end that the landowners may receive the benefits for which the land is assessed.

"That the drainage system of the defendant district has become defective and inefficient because the outlet below bridge 64 is too small to properly care for water brought down by the ditches and canals of the district, and to prevent flooding of plaintiffs' land; that such condition can be remedied and proper improvements and repairs can be made by the district within the limit of its powers." *Mooney v. Drainage District,* 126 Neb. 219, 233, 252 N. W. 910.

After discussing the evidence, it was further found on appeal in the former case that the increase in the capacity of the outlet as fixed by the court below was inadequate. The following appears in the opinion in that case:

"We therefore hold that the findings and decree of the district court should be modified to require the defendant district to enlarge the outlet of its drainage system between bridge 64 to the Missouri river to a minimum carrying capacity of 20,000 cubic feet per second, and that, as so modified, the finding and judgment should be affirmed." *Mooney v. Drainage District,* 126 Neb. 219, 234, 252 N. W. 910.

A formal judgment was entered on these findings and later a mandate was issued, directing the district court to carry into effect its judgment as modified. Judgment on the mandate ordered compliance with the affirmed judgment. Before defendants complied therewith, the legislature changed the drainage law to read as follows:

"If at any time after the final construction of such improvement the same shall become out of repair, obstructed, inefficient, or defective from any cause, *except such as are the result of the use of said improvements as a joint outlet for other systems of drainage improvements,* the board of supervisors, if in its discretion it is practicable and feasible to make such repairs, remove such obstructions and correct such inefficiencies, may order an assessment upon the lands and property benefited by the drainage system for the purpose of placing the same in proper and suitable condition for drainage purposes." Comp. St. Supp. 1935, sec. 31-463.

Construing this provision of the new act to take from the drainage district and its officers the power to enlarge the outlet to their drainage system, they declined to make the improvements ordered.

At this stage of the litigation plaintiffs commenced the case at bar, a new suit in equity, giving a history of the equitable relief already granted to them in the former suit, pleading that defendants were planning to dissolve the drainage district without performing their adjudicated duties to increase the capacity of the outlet to their drainage system, refusing to obey the decree and mandate of the courts, alleging the change in the law did not relieve

them from the performance of their adjudicated duties, and praying for equitable relief by means of a mandatory injunction to prevent the injuries enumerated and the invasion of the adjudicated property rights of plaintiffs.

Defendants answered at great length the petition for an injunction, but their principal defense was the new statute, which they construed to take from them the power to increase the capacity of the outlet to their drainage system. The district court sustained a demurrer. to the answer, and defendants, electing to stand thereon, were ordered to comply fully with the former orders and were enjoined from dissolving the drainage district and from taking any steps to do so until they enlarge the outlet as directed and discharge the other outstanding indebtedness of the district. From this judgment in the present case, defendants appealed to the supreme court, where a former opinion contains a statement of the facts in detail. *Mooney v. Drainage District*, 133 Neb. 197, 274 N. W. 467.

Defendants insist that the district court erred in sustaining the demurrer to the answer and in granting the injunction. The controlling question may be condensed to this form: Did plaintiffs acquire such rights and defendants incur such obligations as cannot be taken away by the change in the drainage laws?

Defendants in their answer herein admitted the judicial proceedings in which they were ordered to increase the capacity of the outlet to their drainage system. In specific terms they answered further:

"These defendants further say that after the entry of judgment on the mandate, on November 19, 1934, they, as supervisors of said district, proceeded in all good faith to comply with said judgment and order, * * * but that before definite action could be taken and contract rights established, the legislature repealed the provisions of the statute upon which said judgment was based."

Referring to the change in the law defendants state their position as follows:

"A drainage district is a public corporation. It is a

little community within itself. It is composed of the landowners, who elect directors and rule the district through popular vote. The duties of the board of supervisors are prescribed by statute. The district is a department of government, with the sovereign power of taxation. The income of the district is applied under the direction of the statute. The county treasurer is the custodian of its funds; his disbursements are regulated as in the case of other public moneys. Such a drainage district, being a public corporation and creature of the legislature, is one over which the legislature has a particularly full power. Every landowner who becomes a member of such district does so with the implied understanding, and with the recognition, of the necessary reservation of power in the legislature to amend and alter the powers, rights and privileges of the district.

"No person can have a vested right in the continuance of any law, or in the continuance of the power delegated to the district to exercise the sovereign right of taxation. The legislature may terminate the powers of the district and withdraw the power of taxation whenever, in its judgment, it is deemed advisable, and before the board of supervisors has so acted within those powers or taken such steps as would create contractual or vested rights under the existing law.

"That the legislature has full control over such public corporations, and may withdraw the power at any time before the board has exercised it, is, we believe, fully borne out by the decisions hereinafter cited in this brief. The amended law is broad in its terms and must be so interpreted. It looks backwards as well as forwards. It says: 'If at any time after the final construction of such improvement the same shall become out of repair,' that the board shall not have power to enlarge its channels in order to accommodate the increased volume of water poured into the ditch from other districts.

"It prohibits that action, as applied to this particular ditch, at any time subsequent to the original construction of its ditches in 1906."

The foregoing quoted paragraphs are taken from the brief of defendants, as showing their position. The power of the state to change the law to release penalties already imposed for its benefit and to withdraw from public corporations the authority to assess lands benefited by public improvements was presented fully in connection with decisions cited. The power to release, by means of a new statute, penalties imposed for the benefit of the state is recognized in the recent case of *Tukey v. Douglas County*, 133 Neb. 732, 277 N. W. 57. The repeal, even, of a statute abolishing capital punishment without a saving clause may set free a malefactor upon whom the death penalty had been imposed, power to execute the judgment having been lost. It is also recognized law that rights and liabilities created by statute may be taken away by a subsequent statute operating prospectively. In the former opinion discussing these problems in this case, the theory and argument of defendants were adopted, the demurrer of plaintiffs to the answer of defendants overruled and the judgment granting the injunction reversed. *Mooney v. Drainage District*, 133 Neb. 197, 274 N. W. 467.

After a reargument the questions for determination were reexamined. The rights now claimed by plaintiffs do not involve penalties which the legislature may waive on behalf of the state. The amendment of the drainage law cited is not limited to prospective operation. Its effect, if operating retroactively, as argued by defendants, and as held in the reported opinion herein, is to set aside a district court judgment affirmed by the supreme court. The judgment was entered and affirmed according to law in the due exercise of judicial power conferred by the Constitution and statutes upon the courts. Lands of plaintiffs in the drainage district were assessed for drainage and the assessments were paid. What plaintiffs acquired by paying their assessments for benefits was a property right in the improvement of their lands by drainage. It was adjudicated in the former suit as follows:

"It was the intent of the legislature in the enactment of

the provisions of article 4, ch. 31, Comp. St. 1929, to impose a duty on drainage districts organized thereunder to maintain and keep in repair the drainage systems constructed under the powers given them by such act, to the end that landowners whose land was assessed for the construction of such system on the basis of expected benefits from such construction may be protected in the enjoyment of such benefits." *Mooney v. Drainage District,* 126 Neb. 219, 252 N. W. 910.

It was also adjudicated in the same former suit that defendants failed to grant the relief to which plaintiffs were entitled under the drainage law and that failure of duty in that respect resulted in the flooding of plaintiffs' lands and the impairment of drainage for which they paid. It was further adjudicated that defendants had the necessary power and means to increase the capacity of the outlet to 20,000 cubic feet of water a second. Plaintiffs were not reduced to a status limited to a mere connection with the drainage district. They had individual property rights which they acquired by payment of assessments and these rights extended to the enlargement of the drainage outlet. The failure to recognize acquired individual property rights of drainage accruing to plaintiffs and to consider the judgment for costs seems to be fatal defects in the argument that power to make the improvement ordered was lost by the change in the law. The better view seems to be that such rights, when adjudicated, should be classed in the law as vested private property rights beyond legislative invasion. An eminent text-writer stated the law as follows:

"The power to open or vacate judgments is essentially judicial. Therefore, on the great constitutional principle of the separation of the powers and functions of the three departments of government, it cannot be exercised by the legislature. While a statute may indeed declare what judgments shall in future be subject to be vacated, or when or how or for what causes, it cannot apply retrospectively to a judgment already rendered and which had

become final and unalterable by the court before its passage. Such an act would be unconstitutional and void on two grounds; first, because it would unlawfully impair the fixed and vested rights of the successful litigant; and second, because it would be an unwarranted invasion of the province of the judicial department." 1 Black, Judgments (2d ed.) sec. 298.

Judge Cooley expressed the same view:

"Legislative action cannot be made to retroact upon past controversies, and to reverse decisions which the courts, in the exercise of their undoubted authority, have made; for this would not only be the exercise of judicial power, but it would be its exercise in the most objectionable and offensive form, since the legislature would in effect sit as a court of review to which parties might appeal when dissatisfied with the rulings of the courts." 1 Cooley, Constitutional Limitations (8th ed.) 190.

As recently as 1922, the supreme court of the United States said:

"The private rights of parties which have been vested by the judgment of a court cannot be taken away by subsequent legislation, but must be thereafter enforced by the court regardless of such legislation." *Hodges v. Snyder*, 261 U. S. 600.

The state by an amendatory or repealing legislative act, operating retroactively, as already explained, may release penalties imposed for the protection or benefit of the state under a former statute. By the same method the state may abandon its own claims and rights, if not forbidden by the Constitution. But private property rights acquired under statutes and established by valid judgments of courts are not subject to legislative invasion by means of new statutes. Judgments for costs recovered by private individuals against public corporations for nonperformance of duties and obligations and adjudicated property rights of individuals under statutes are not lost by operation of subsequent statutes amending or repealing the former statutes under which such rights were granted and ad-

judicated. *State of Pennsylvania.v. Wheeling and Belmont Bridge Co.*, 18 How. (U. S.). 421; *Ettor v. Tacoma*, 228 U. S. 148; *The Clinton Bridge*, 10 Wall. (U. S.) 454; *United States v. Klein*, 13 Wall. (U. S.) 128; *Coombes v. Getz*, 285 U. S. 434.

The drainage district is not dissolved, nor can it be, until it discharges its outstanding obligations, including the affirmed judgment requiring it to protect the private property rights of plaintiffs by increasing the capacity of the outlet to its drainage system to 20,000 cubic feet of water a second.

The former opinion and judgment herein are vacated and the judgment of the district court is

AFFIRMED.

PAINE, J., dissents, for the reasons set out in former opinion, *Mooney v. Drainage District*, 133 Neb. 197, 274 N. W. 467.