WILLIAM J. RITTER ET AL., APPELLANTS, V. DRAINAGE DIS-
TRICT NO. 1 OF OTOE AND JOHNSON COUNTIES, APPELLEES.

291 N. W. 718

FILED APRIL 12, 1940. NO. 30776.

*Spencer & Neumeister,* for appellants.

*Moran & James* and *Otto H. Wellensiek, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

ROSE, J.

This is a suit in equity for a mandatory injunction requiring defendants, Drainage District Number 1 of Otoe and Johnson counties and the members of the board of district supervisors, to repair portions of its drainage system to prevent the overflow of plaintiffs' lands and the destruction of their crops by water. Plaintiffs seek also an injunction to prevent defendants, including the clerk of the district court for Otoe county, from holding an election to vote on the dissolution of the drainage district.

Plaintiffs are landowners who paid assessments for drainage which, through failure of the district to repair ditches, no longer protects their lands or crops from damages by water. Plaintiffs sue also for others similarly situated.

The drainage district was duly incorporated in 1910 pursuant to the drainage law of 1905 and amendments thereof. Laws 1905, ch. 161; Laws 1907, ch. 153; Laws 1909, ch. 150; Comp. St. 1929, sec. 31-401 *et seq.* The statute of 1905 provides for the drainage of lands in the district and for protection thereof from the effects of water. The regularity and validity of the incorporation of the district under its charter were confirmed by the district court for Otoe county and by the supreme court. *Drainage District v. Wilkins,* 93 Neb. 567, 141 N. W. 151.

The charter provides that the corporation shall continue for 50 years and it therefore has 20 years to run unless sooner dissolved. The improvement district contained approximately 16,090 acres of land. The articles of incorporation named each landowner and described his tract. In the feasible, engineering project, the benefits to land in the district were estimated at $566,050.66 and the cost of construction at $215,843.96. The ditches, dikes, drains and other improvements were made according to the plans adopted. Total benefits to the extent of 48½ per cent. only were levied on the lands in the entire district. Plaintiffs paid the assessments levied against their lands.

Plaintiffs allege in their petition that improvements formerly benefiting their lands no longer serve the purposes of drainage; that dikes have been washed away and ditches filled up; that defendants refuse to make the necessary repairs; that they have on hand a fund of $800 which they threaten to use in calling and holding an election to dissolve the district pursuant to the act of 1933. Comp. St. Supp. 1939, sec. 31-475.

That act provides for the dissolution of a drainage district organized under article 4, ch. 31, Comp. St. 1929, and directs how the election shall be called and conducted. That there shall be no outstanding indebtedness of the district is

a condition of dissolution by election. The act of 1933 is alleged to be void, if construed to operate retroactively and prevent the relief sought by plaintiffs. In different forms the sufficiency of the petition to state a cause of action was raised by demurrers.

The district court heard the cause on the demurrers, special and general, and held that the act authorizing the dissolution of the district by voters at an election was constitutional; that the petition does not disclose any outstanding indebtedness of the district; that plaintiffs have no contractual or vested rights to prevent the election to dissolve the district; that the petition does not state facts sufficient to constitute a cause of action; that a former temporary injunction was wrongfully granted; that the demurrers should be sustained; that the relief sought by plaintiffs should be denied. Plaintiffs appealed.

The rulings of the district court conform to the views of defendants and are defended as sound in elaborate arguments in which many cases are cited.

The position of plaintiffs is that the drainage act, the valid proceedings under it, the signing of the articles organizing the public corporation containing the promises and the obligations of the signers to pay assessments for drainage, the duty of the district to make repairs for 50 years, the construction of the feasible drainage project and the levy and payment of assessments on the property of the landowners for drainage purposes constitute a binding contract between the district and the individual owners of benefited lands therein.

The legislature provided by law for the creation of a public body or corporation to deal with individual landowners for the drainage of their lands on equal terms measured by individual benefits. The drainage district, acting through its board of supervisors, exercised public powers and performed public duties in constructing a drainage system to be in operation 50 years. The public corporation in the performance of such duties acted as a unit. Each landowner acted for himself in making promises and

in paying his proportionate share of the entire cost of the improvement by means of assessments for individual benefits. One of the articles of incorporation provides:

"The persons whose names are hereto subscribed are a majority in interest of the owners of all of the lands included within said district above described, and the undersigned are willing and hereby obligate themselves to pay the tax and taxes that may be levied and assessed to pay the expenses of making the improvements for which this district is formed."

The statute which is part of the charter provides:

"If at any time after the final construction of such improvement the same shall become out of repair, obstructed, inefficient, or defective from any cause, the board of supervisors may order an assessment upon the lands and property benefited by the drainage system for the purpose of placing the same in proper and suitable condition for drainage purposes." Comp. St. 1929, sec. 31-463, "may" therein being mandatory. *Mooney v. Drainage District*, 126 Neb. 219, 252 N. W. 910.

The duty of the board of supervisors to make the necessary repairs, as the statute has been construed, is as imperative as the duty to complete the drainage system and levy and collect assessments for benefits in the first instance. *Mooney v. Drainage District*, 134 Neb. 192, 278 N. W. 368. In an earlier opinion in the same case it was said:

"Whenever such drainage system becomes out of repair, defective, or inefficient for any reason, it is its (district's) duty to improve and repair it, within the limit of its power, so that it may serve the purpose for which it was constructed, and to the end that the landowners may receive the benefits for which the land is assessed." *Mooney v. Drainage District*, 126 Neb. 219, 233, 252 N. W. 910.

The written promises or legal obligations of the landowners to pay assessments for drainage improvements and the statutory duty of the district to construct the drainage system, keep the drains in repair, and levy the necessary taxes or assessments to pay the expense of drainage, and

the performance of duties and obligations by both district and landowners created contractual relations through which the landowners acquired vested property rights in the improvement of their lands by drainage. The system of drainage contemplated by the legislature did not mean a plan furnishing 50-year drainage for some landowners in the district and denying the same protection to others on an equal footing. A law text reads thus:

"It has become the established law that a legislative enactment, in the ordinary form of a statute, may contain provisions which, when accepted as the basis of action by individuals or corporations, become contracts between them and the state within the protection of the clause of the federal Constitution forbidding impairment of contractual obligations." 6 R. C. L. 338, sec. 331. See, also, 12 C. J. 969.

An opinion of the supreme court of the United States, referring to contracts arising from statutes, contains this language:

"And in regard to the cases of contract, while the principle that a contract may arise from a legislative enactment has been reiterated times without number, it must always rest for its support in the particular case upon the construction to be given the act." *American Smelting & Refining Co. v. Colorado,* 204 U. S. 103, 115, 27 S. Ct. 198.

The drainage act, the proceedings thereunder and the payments by the landowners for drainage as the facts are alleged in the petition bring the case at bar within the foregoing principle applicable to contracts arising from legislative enactments.

The contractual and vested rights of plaintiffs cannot be taken away by the subsequent act authorizing dissolution of the drainage district by the ballots of landowners who may still enjoy the benefits of drainage, while plaintiffs who are landowners in the same district with the same rights are deprived of drainage. The law applicable has been stated as follows:

"A legislative act will not be permitted, even if an at-

tempt so to do is disclosed, to operate retrospectively where it will have the effect to invalidate or impair the obligation of contracts or interfere with vested rights. 2 Lewis' Sutherland, Statutory Construction (2d ed.) sec. 642; *United States v. Jackson,* 143 Fed. 783; *Hoyt Metal Co. v. Atwood,* 289 Fed. 453; *Spitzer v. Healy,* 218 N. Y. 737." *Travelers Ins. Co. v. Ohler,* 119 Neb. 121, 227 N. W. 449. See, also, *Mooney v. Drainage District,* 134 Neb. 192, 278 N. W. 368.

In sustaining the demurrers to the petition and in refusing to grant plaintiffs equitable relief, the district court erred. The judgment below is therefore reversed and the cause remanded for further proceedings.

REVERSED.