REQUESTED BY: Senator Harold F. Sieck State Capitol Lincoln, NE 68509
Dear Senator Sieck:
We are responding to your request that we review the constitutionality of LB 243 under the United States and Nebraska constitutions.
LB 243 is an act to amend Neb.Rev.Stat. § 2-3234 (Reissue 1977), relating to Natural Resource Districts by restricting their power of eminent domain. Neb.Rev.Stat. 2-3234
(Reissue 1977) grants eminent domain to Natural Resource Districts when necessary to carry out their purposes. LB 243 would restrict the power of eminent domain to prevent its use `to acquire property for a project of which 50 percent or more of the benefits are recreational.' Section 2 of LB 243 reads as follows: `The restriction on the use of eminent domain provided in subsection (2) of section 2-3234
shall apply to all proceedings which have not reached final adjudication prior to the effective date of this act.' The question to be determined is whether section 2 of LB 243 is an ex post facto law, or law impairing the obligation of contracts violating Article I, Section 16 of the Nebraska Constitution or deprives persons of property without due process of law contrary to the Fourteenth Amendment of the United States Constitution.
It has long been recognized in this state that a statute may not operate retroactively where it would impair the obligation of a contract or interfere with a vested right.State ex rel. Douglas v. Nebraska Mortgage Finance Fund,204 Neb. 445, 464 283 N.W.2d 12 (1979). It was long ago recognized by the United States Supreme Court in Hodges v.Snyder, 261 U.S. 600 (1923) that private vested rights of parties cannot be taken away by subsequent legislation. A statute will not be applied retroactively, even where such legislative intent is clear, where the effect would be to impair vested rights or contracts. Mooney v. Drainage DistrictNo. 1 of Richardson County, 134 Neb. 192,278 N.W. 368 (1938); Karer v. Karer, 190 Neb. 610 211 N.W.2d 116
(1973). Where its effect would be unconstitutional, its application would be limited to be prospective.
However, vested rights and obligations held by the state may be treated differently than rights held by private persons. In Mooney v. Drainage District No. 1 ofRichardson County, supra, our court stated:
 The state by an amendatory or repealing legislative act, operating retroactively . . . may release penalties imposed for the protection or benefit of the state under a former statute. By the same method the state may abandon its own claims and rights, if not forbidden by the Constitution. But private property rights acquired under statutes and established by valid judgments of courts are not subject to legislative invasion by means of new statutes.
Id. at 134 Neb. 199. The court in Mooney v. Drainage DistrictNo. 1, supra, relied upon the United States Supreme Court decision in Hodges v. Snyder, supra, which held that a subsequent legislative act affecting public rather than private vested rights was constitutionally permissible. A more recent recognition of this principle is found in deRodulfa v. United States, 461 F.2d 1240, 1252 note 61, (D.C. Cir. 1972) rehearing denied; cert. denied, 409 U.S. 949.
It has been recognized by our supreme court in Ritterv. Drainage District No. 1 of Otoe and Johnson Counties,137 Neb. 866, 291 N.W. 718 (1940) that a legislative act and the proceedings thereunder may lead to and create contracts between the state and individuals or corporations which will thereafter become protected pursuant to Article I, Section 16. In this case the court found that the act, the proceedings thereunder and the payments by the landowners for drainage created contracts protected under the Constitution.Id. at 870.
LB 243 restricts use of eminent domain to `acquire property.' and seeks to apply to `all proceedings which have not reached final adjudication prior to the effective date of this act.' Acquisition of property is essentially accomplished when the Petition for Condemnation is filed in the county court. Chaloupka v. State Department of Roads,176 Neb. 746, 127 N.W.2d 291, 297 (1964). The right of the condemner to the property has been determined by the act of filing the Petition, and the only issue remaining is the compensation of the condemnee for the damages he has suffered. The only exception is challenge by the condemnee's Answer to the Petition of the condemner's right to take this property. If such a challenge is made, then the right of acquisition is not determined until after a final judgment to which no appeal is taken. Krauter v. Lower Big Blue NaturalResource District, 100 Neb. 431, 259 N.W.2d 274
(1977). In the ordinary case described first above, the final adjudication of the propriety of the taking by eminent domain has been accomplished by the filing of the Petition in county court. However, where the condemnee challenges the authority for condemnation of his property, this is not complete until the litigation finally terminates without further appeal.
In conclusion, we do not know whether any contracts or other vested interests have been created for private persons in `proceedings which have not reached final adjudication prior to the effective date of this act.' This act would extinguish vested rights and obligations which exist benefiting the state or its political subdivisions. Should the act affect private vested rights and contracts, it would not be declared unconstitutional, but applied prospectively only.
The act is therefore valid under the Nebraska and United States Constitutions.
You next question whether LB 243 is unconstitutional for vagueness in its failure to define the criteria to be used in determining whether the project has a purpose which is 50 percent or more recreational.
It is a general rule of statutory construction that a statute is open to construction only where the language used requires interpretation or may reasonably be considered ambiguous.State ex rel. Halloran v. Hawes, 203 Neb. 405,279 N.W.2d 96 (1979). Where the words of the statute are plain, direct, and unambiguous, no interpretation is needed to ascertain the meaning. It is not within the province of the court to read a meaning into a statute that is not warranted by the legislative language nor to read out language which is plain and direct and unambiguous. Cochran v.County of Lincoln, 203 Neb. 818, 280 N.W.2d 897 (1979). A court should do whatever reasonable to give an Act a constitutional interpretation. PPG Industries Canada Ltd. v.Kreuscher, 204 Neb. 220, 281 N.W.2d 762 (1979). In interpreting a statute a court will refer to the whole Act and purpose served by it; a word used repeatedly will have the same meaning throughout. PPG Industries Canada Ltd. v.Kreuscher, Id., 281 N.W.2d at 767-768.
Neb.Rev.Stat. § 2-3229 (Supp. 1980) lists the 12 purposes for which the Natural Resource Districts are created. These include erosion prevention and control, prevention of damages from floods, flood prevention and control, soil conservation, water supply, development and conservation of ground and surface water, pollution control, solid waste disposal and sanitary drainage, drainage improvement, development and management of fish and wildlife habitat, development and management of recreational and park facilities and forestry and range management. These are the purposes for which eminent domain may be used pursuant to Neb.Rev.Stat. 2-3234. Reading LB 243 in light of Neb.Rev.Stat. § 2-3229
(Supp. 1980) provides sufficient definition to remove any question of ambiguity in the word `recreational.'
We find that LB 243 is not ambiguous or vague and is a valid act.
Very truly yours, PAUL L. DOUGLAS Attorney General G. Roderic Anderson Assistant Attorney General